UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X   1:09-cv-4469 (LAK)
TRACY WEBBER,                                                       :
                                                                    :
                              Plaintiff,                          :
                                                                    :
   -against-                                                       :
                                                                    :
PLANNED PARENTHOOD HUDSON PECONIC,                                  :
INC. and JENNIFER LEONARDI,                                         :
                                                                    :
                            Defendants.                         :
------------------------------------------------------------------- X


# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS

SILVERBERG ZALANTIS LLP
220 White Plains Road
Tarrytown, New York 10591
(914) 682-0707
*Attorneys for Defendants*

Katherine Zalantis (KZ-7446)
Steven Silverberg (SS-0975)
*Of Counsel*

**Table of Contents**

Introduction ........................................................................................................................................1

Argument ...........................................................................................................................................1

    Point I:  This Court Should Dismiss Plaintiff's Title VII Claims ............................................1

   A.  With the Exception of One Single Allegation, Plaintiff's Claims Under Title VII are

        Time-Barred ..........................................................................................................................1

   B.   Plaintiff Failed to State a Claim for Hostile Work Environment For Racial Discrimination..........4

    Point II:  The Claims Against Leonard Should Be Dismissed  ................................................7

    Point III:  Plaintiff Fails to Set Forth A Claim Under New York Executive Law  ....................8

    Point IV:  This Court Should Not Consider Plaintiff's Affidavit ..............................................9

Conclusion .......................................................................................................................................10

# Table of Authorities

## Cases

*Borrero v. American Express Bank*, 533 F.Supp.2d 429 (S.D.N.Y. 2008)......................................................1

*Campbell v. County of Onondaga*, 2009 WL 3163498 (N.D.N.Y. 2009) .....................................................4

*Hayden v. County of Nassau*, 180 F.3d 42 (2d Cir. 1999) ...........................................................................10

*Murray-Dahnir v. Loews Corp.*, 1999 WL 639699 (S.D.N.Y. 1999).........................................................5, 6

*Patane v. Clark*, 508 F.3d 106 (2d Cir. 2007)................................................................................................2

*Prince v. Madison Square Garden,* 472 F.Supp.2d 372 (S.D.N.Y. 2006).....................................................5

*Raghavaendra v. Trustees of Columbia University*, 2008 WL 2696226 (S.D.N.Y. 2008) .......................5, 6

*Roberts v. County of Nassau*, 140 Fed. Appx. 277 (2d Cir. 2005) ................................................................4

*Thomas v. City of New York*, 305 Fed. Appx. 754, 2009 WL 33612 (2d Cir. 2009).....................................7

*Winkler-Koch Eng. Co. v. Universal Oil Products, Co.*, 79 F.Supp. 1013 (S.D.N.Y. 1947) ........................8

## Statutes

New York Executive Law § 290 et. seq............................................................................................... 7, 8

Title VII................................................................................................................................... *various*

**Introduction**

Defendants Planned Parenthood Hudson Peconic, Inc. ("PPHP") and Jennifer Leonardi ("Leonardi") (collectively, "Defendants") submit this reply memorandum of law in further support of their Rule 12(b)(1) and Rule 12(b)(6) motion to dismiss the Complaint and "Ammended" [sic] Complaint (collectively, the "Pleadings") of Plaintiff Tracy Webber ("Plaintiff") in their entirety.

**Argument**

**Point I:**   **This Court Should Dismiss Plaintiff's Title VII Claims**

   **A. With the Exception of One Single Allegation, Plaintiff's Claims Under Title VII are Time-Barred**

As detailed in the opening brief, Title VII claims are barred by failing to file charges with the EEOC within 300 days of the alleged discriminatory act and "[t]he Supreme Court has held that '[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act,' and so a charge must be filed within the statutory time period after the discrete discriminatory act occurs." *Borrero v. American Express Bank*, 533 F.Supp.2d 429 (S.D.N.Y. 2008)(*quoting, Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)). Accordingly, "only incidents that took place within the timely filing period are actionable." *Id*.

With the exception of the August 31, 2007 letter, <u>every remaining Title VII allegation</u> in the Pleadings occurred beyond the 300-day period as follows:

- 545 days between the December 22, 2006 office holiday party incident and the June 19, 2008 EEOC filing (*see* Pleadings ¶¶ 14, 69);
- 489 days between the February 16, 2007 filing of the formal complaint with PPHP's Director of Human Resources Judy Archer and the June 19, 2008 EEOC filing (*see* Pleadings ¶¶ 19, 76);
- 445 days between the April 1, 2007 alleged termination of Ms. Archer and the June 19, 2008 EEOC Complaint (*see* Pleadings ¶¶ 20, 77);
- 359 days between the June 26 2007 date Plaintiff went out on "maternity" leave (on June 26, 2007) from her position at PPHP and June 19, 2008 EEOC Complaint filing (*see* Pleadings ¶¶ 21, 77 and EEOC Filing, p. 2 attached to moving papers as Exhibit "C");
- 350 days between the date of the July 5, 2007 letter from Leslie Pargament, Senior Vice President of Compliance and Human Resources and the June 19, 2008 EEOC filing (*see* Pleadings ¶ 79);

1

- 329 days between July 26, 2007 letter from Aetna stating that Plaintiff's disability benefits were up for renewal and the June 19, 2007 EEOC filing (*see* Pleadings ¶ 80);
- 317 days between the date Plaintiff gave birth on August 7, 2007 and the June 19, 2008 EEOC filing (*see* Pleadings ¶ 81 and EEOC filing, p. 2 attached to the moving papers as Exhibit "C");
- Approximately 317 days between (i) the dates PPHP circulated an agency wide e-main announcing the birth of Plaintiff's daughter and Leonardi called Plaintiff's cell phone "as she was recovering in the delivery room"; and (ii) the June 19, 2008 EEOC Complaint filing (*see* Pleadings ¶ 82);
- Approximately 317 days between the date Plaintiff received the August 7, 2007 card from PPHP congratulating her on her first year anniversary and the June 19, 2008 EEOC filing (*see* Pleadings ¶ 81).

Although the August 31, 2007 letter was dated 293 days before the EEOC filing and therefore, it is the only "actionable" Title VII allegation in the entire Pleadings, this lone allegation is insufficient to support Plaintiff's Title VII claims based upon race discrimination, pregnancy discrimination or retaliation (first through third causes of action). Again, the August 31, 2007 letter from Ms. Pargament (PPHP's VP of Compliance and Human Resources) stated that Plaintiff was previously advised that she was not entitled to Family Leave and as Aetna notified PPHP that Plaintiff's disability period ended on August 10, 2007 and since she had "not reported for work or called your supervisor or the Human Resources Department, you are absent without approval and have abandoned your job."

As established by the Second Circuit, "[i]t is axiomatic that mistreatment at work . . . is actionable under Title VII only when it occurs because of an employee's sex, or other protected characteristic." *Patane v. Clark*, 508 F.3d 106 (2d Cir. 2007)(*citing, Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001)). Accordingly, the Second Circuit has upheld the dismissal of Title VII claims where the plaintiff failed to "plead any facts that would create an inference that any [adverse] action taken by . . . [any] defendant was based upon her gender" or other protected characteristic. *Id*. Here, since neither: (i) the claims in the Pleadings concerning the August 31, 2007 letter (*see* Pleadings ¶¶ 23, 83); nor (ii) the August 31, 2007 letter itself, created any inferences of any adverse action resulting from Plaintiff's race or related to any retaliation claim, the Title VII claims should be dismissed.

Moreover, although the August 31, 2007 letter is related to Plaintiff's maternity leave, the Pleadings' allegations do not create an inference of an adverse action, let alone an adverse action caused by Plaintiff's pregnancy. Plaintiff's Pleadings expressly refer to a July 5, 2007 letter from Leslie Pargament, (*see* Pleadings ¶ 79) and on a motion to dismiss, this Court may consider a document referred to or incorporated by reference into a complaint without converting the motion into one for summary judgment (*see* Opening Brief, Point IB). The July 5, 2007 letter (attached to Plaintiff's Declaration as Exhibit "B" and the Zalantis Reply Declaration as Exhibit "A") provides:

> It was nice speaking with you today. As we discussed, PPHP's FMLA policy states that for an employee to be eligible for FMLA, she "must have worked for PPHP for a least 12 months, and have worked for at least 1,250 hours in the 12 months preceding the leave request." **Since your date of hire was August 14, 2006, you are not eligible for leave under the FMLA policy**. (*Emphasis added*).

This letter further advises Plaintiff that while she was not eligible for FMLA, she was eligible for medical leave and disability. Although the July 5, 2007 letter references a six-week leave period from the date of birth, Plaintiff's own Pleadings provide that she went out on maternity leave more than a month before giving birth (on June 26, 2007) (*see* Pleadings ¶¶ 21, 78; *see also*, EEOC Complaint, attached as Exhibit "C" to moving papers providing "I went out on maternity leave on June 26, 2007"). The Pleadings also admit that the approved disability leave was only through August 10, 2007 – Plaintiff's Pleadings at ¶ 80 refer to a letter from Aetna dated July 26, 2007 (which is attached to Plaintiff's Declaration as Exhibit "E" and to Defendants' moving papers as Exhibit "E") that provides "your claim has been approved through 8-10-07" and outlines Plaintiff's obligations if "unable to return to work on 8-11-07." Despite this admission, the Pleadings do not allege that Aetna or Plaintiff ever notified PPHP of any extension of the approved disability leave post-August 11, 2007 even though Plaintiff was obligated to so report "if the dates of leave change or are extended or initially were unknown" (*see* Exhibit "G" to moving papers, PPHP Package, section entitled "Reporting While on Leave"). Accordingly, having not heard from Plaintiff and having not been advised as to any extension of leave, PPHP advised Plaintiff on August 31,

2007 that she had been expected to return to work on August 11, 2007 and "[t]hus, by virtue of your not returning to work, your date of voluntary resignation is effectively August 11, 2007." Accordingly, Plaintiff failed to plead a plausible pregnancy discrimination claim.

### B. Plaintiff Failed to State a Claim for Hostile Work Environment For Racial Discrimination

While Plaintiff's second and third causes of action assert straight Title VII claims, Plaintiff's first cause of action (race discrimination) alleges a hostile work environment. Unlike straight Title VII claims, acts occurring outside of the statute of limitations may be considered in a hostile work environment claim if "'any act that is part of the hostile work environment' occurs within the statutory time period." *Campbell v. County of Onondaga*, 2009 WL 3163498 (N.D.N.Y. 2009)(*quoting, Shomo v. City of New York*, 579 F.3d 176 (2d Cir. 2009)). However, to properly assert a hostile work environment claim, a plaintiff would have to allege "**actions contributing to that environment** that occurred within the statute of limitations." *Roberts v. County of Nassau*, 140 Fed. Appx. 277 (2d Cir. 2005)(*emphasis added*). Here, the only "action" occurring within the statute of limitations – the August 31, 2007 letter – is insufficient to state a hostile work environment based upon race as the Pleadings' allegations concerning the August 31, 2007 letter are unrelated to a hostile work environment based upon race.

Nonetheless, even if the inclusion of the lone allegation within the statute of limitations warranted the Court's consideration of the other Pleading allegations (which Defendants in no way concede), the Pleadings are insufficient to state a cause of action for a hostile work environment. As detailed in the opening brief (despite Plaintiff's erroneous claim that Defendants argued the wrong standard), to state a claim for hostile work environment a plaintiff must allege both permeation of a work environment with conduct so severe or pervasive that it alters the working conditions, and that there is a specific basis for imputing such conduct to the employer. And to "successfully plead a hostile work environment, plaintiff must be subjected to a workplace 'permeated with 'discriminatory intimidation, ridicule and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive

4

working environment.'" *Murray-Dahnir v. Loews Corp.*, 1999 WL 639699 (S.D.N.Y. 1999)(*quoting, Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

The "conduct in question 'must be severe or pervasive enough to create an environment that 'would reasonably be perceived and is perceived as hostile or abusive.'"" *Prince v. Madison Square Garden,* 472 F. Supp.2d 372, 377 (S.D.N.Y. 2006)(*quoting, Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997)). Accordingly, the first prong of the hostile work environment claim requires "allegations that demonstrate that the environment was both objectively and subjectively hostile or abusive." *Id. (citing, Gregory v. Daly*, 243 F.3d 687, 691-92 (2d Cir. 2001)). Further, "[a]s a general rule, incidents must be more than 'episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'" *Raghavendra v. Trustees of Columbia University,* 2008 WL 2696226 (S.D.N.Y. 2008)(*quoting, Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002)).

The Court in *Raghavaendra v. Trustees of Columbia University*, 2008 WL 2696226 (S.D.N.Y. 2008), ruled that the plaintiff failed to "meet the threshold 'plausibility' standard of pleading" and dismissed plaintiff's hostile work environment claim. In that case, plaintiff (who the Court found was a "self-described 'Black (Dark-skinned) male of East-Indian race'") alleged hostile work environment claims that: (1) plaintiff's supervisor made two comments in 2001 that plaintiff could be mistaken for a terrorist and plaintiff's application would be handled differently because he was not white; (2) the supervisor referred to an unidentified minority employee as a racial epithet in plaintiff's presence; (3) plaintiff did not get his office while other lower-grade white employees did; and (4) plaintiff could not eat lunch at his desk because white employees objected to the smell of ethnic Indian food. *Id*. at * 8. In addition, plaintiff pointed to the University president's handling of certain incidents, including racist jokes by the marching band and a racist cartoon in the University newspaper. *Id*. The Court, however, ruled that these claims "fall short of meeting [the applicable] standard" and were inadequate to prove that "the conduct of Defendants and the discriminatory conditions of Raghavendra's workplace were sufficiently

5

pervasive or severe as to alter the conditions of his employment and create an abusive working environment." *Id*. The Court explained that the allegations "are not continuous or concerted as required by *Alfano* [*Alfano v. Costello*, 294 F.3d 365 (2d Cir. 2002)]; they are episodic in nature. The case law makes clear that sparse, episodic allegations stretching over a four-year span are inadequate to support a hostile work environment claim because they fail to demonstrate a discriminatory environment that is pervasive and/or severe." *Id*. Thus, the Court granted the motion to dismiss.

Similarly, the Court in *Murray-Dahnir v. Loews Corp*., 1999 WL 639699 (S.D.N.Y. 1999) granted a motion to dismiss a hostile work environment claim where a plaintiff alleged: (1) "unlike non African-American managers, he was 'compelled to work extraordinary hours without proper staffing and support'"; (2) "beginning in July 1998, he was subjected to a 'severe hostile environment' in that his supervisor 'ceased direct communication with [him]' and admonished him 'publicly and unjustifiably' on 'numerous occasions'"; and (3) "on July 28, 1998, he received a memo from his supervisor containing 'illegitimate and pretextual criticism.'" The Court ruled that as a matter of law, the allegations failed to state a claim: "[n]one of these alleged acts rise objectively to the level of racial hostility. In fact, the amended complaint fails to allege any acts or comments which are even racial in nature." *Id.* at *4 Here, like in *Raghavaendra* and *Murray-Dahner*, the Pleadings fail to "meet the threshold 'plausibility' standard of pleading." At best, the Pleadings plead purported episodic allegations. The Pleadings refer to the isolated "Aunt Jemima" comment, which by the Pleadings' own admission was a comment not said derogatorily, but rather, in a lighthearted vein during a holiday party when Leonardi compared both Plaintiff and herself to marketing figures (Aunt Jemima and Betty Crocker) based upon how they looked with holiday bows tied around their heads. As discussed in the opening brief, even if the Aunt Jemima comment could be viewed as "both objectively and subjectively hostile or abusive" (although this was not Leonardi's intent), the Second Circuit has conclusively established that for racial comments or slurs to constitute a hostile work environment "there must be 'more than a few isolated incidents of racial

6

enmity'" (*see Schwapp v. Town of Avon*, 118 F.3d 106, 110 (1997). Even use of "the 'n' word" is not sufficient to establish a hostile work environment claim (*see* discussion of *Thomas v. City of New York*, 305 Fed. Appx. 754, 2009 WL 33612 (2d Cir. 2009) in opening brief) and as set forth above in *Raghavaendra,* alleged racial slurs (comparing plaintiff to a terrorist, etc.) are insufficient to meet the plausible pleading standard.

**Point II:**     **The Claims Against Leonard Should Be Dismissed**

In the context of criticizing Defendants for, in the Opening Brief, contending that individuals are not subject to liability under Title VII, Plaintiff even concedes that an individual is, in fact, not liable, yet argues that Defendants should not have even raised this point (and wasted judicial resources by doing so). Plaintiff now claims that she was not seeking liability under Title VII as against Leonardi as Plaintiff distinguished her claims for relief in the heading under the various causes of action. But contrary to Plaintiff's come-lately concession, the Pleadings seek relief against both Defendants (see Pleadings ¶¶ 92, 96, 100, 103, 107, 111 and "Wherefore" section). FRCP 10(b) provides that "a party must state its claims or defenses in numbered paragraph" and the Pleadings seek relief in the "numbered paragraph" as against <u>both Defendants</u>. Courts have posited that headings "technically" violate Rule 10(b), but as they are "commonly used in bulky pleadings, and are helpful to the Court in directing its attention to their content," they may remain in a complaint. *Winkler-Koch Eng. Co. v. Universal Oil Products, Co.*, 79 F.Supp. 1013 (S.D.N.Y. 1947). Accordingly, Defendants could not risk an interpretation of Plaintiff's "headings" to mean that Plaintiff was not asserting certain claims against Leonardi when the body of the Pleadings sought relief against both "Defendants" without specification. Nonetheless, given Plaintiff's concession, to the extent that the Pleadings assert Title VII claims against Leonardi, they should be dismissed.

Secondly, as discussed in the opening brief, although there is no blanket prohibition against individual liability under New York's Human Rights Law (New York Executive Law § 290 et seq.) like

there is under Title VII, New York courts have established that corporate employees are not subject to individual liability for employment discrimination absent (1) ownership interest in the company or (2) authority beyond merely executing a company's personnel decisions.  Again, the Pleadings do not state that Leonardi had an ownership interest in PPHP, a Not-for-Profit Corporation, or that she had authority beyond carrying out personnel decisions made by others.

Most importantly, there is no nexus between the alleged August 31, 2007 "letter of termination" (*see* Pleadings ¶ 83) and Leonardi.  Plaintiff claims, without any reference to case law, that this Court cannot consider the actual August 31, 2007 letter which was sent by Leslie Pargament, MBA, Senior Vice President, Compliance & HR (and not by Leonardi) to Plaintiff, since it is allegedly not "authenticated evidence."  However,  on a motion to dismiss, a court may consider documents attached to the complaint or incorporated into the complaint by reference (*see* Opening Brief, Point IB).  This Court does not have to accept that Leonardi sent the August 31, 2007 letter:  (i) when this is not alleged in any manner in the Pleadings; and (ii) when the actual letter, which this Court may consider on a motion to dismiss, was sent by Leslie Pargament and not by Leonardi.  Thus, the claims against Leonardi should be dismissed.

**Point III:       Plaintiff Fails to Set Forth A Claim Under New York Executive Law**

As set forth in the opening brief, although the statute of limitations for claims brought under New York's Human Rights Law (Executive Law § 290 et. seq.) is three years, employment discrimination claims brought under New York's Human Rights Law "are evaluated under the same standards that apply to Title VII cases."  Plaintiff's Pleadings assert claims under New York Executive Law in its fourth, fifth and sixth causes of action.  As briefed above and in the opening brief, mistreatment at work is only "actionable" when it occurs because of an employee's protected class and a Complaint must plead some factual inference between any adverse action and the protected class (in this case, race, pregnancy and retaliation) to survive a motion to dismiss.

8

Again, the Plaintiff has not sufficiently pled an adverse employment action; this Court does not have to accept as true Plaintiff's conclusory claim that she was "terminated" since these allegation are contradicted by documentary evidence admissible in connection with the instant motion to dismiss.  A review of the actual document evidences that PPHP did not terminate Plaintiff.  Rather, because Plaintiff failed to return to work, failed to contact her supervisor or PPHP Human Resources after her disability period ended, and admittedly failed to qualify for family leave, PPHP treated Plaintiff's failure to return to work as a "voluntary resignation."

Moreover, even if the August 31, 2007 letter could be construed as a "letter of termination" (which Defendants do not concede), the Pleadings fail to plead any factual inference between Plaintiff's race or pregnancy (or the claimed retaliation) and the claimed letter of termination.  There is simply no nexus between the purported adverse employment action and the alleged discriminatory comment.  Again, the letter advising that Plaintiff's failure to return to work was deemed a voluntary resignation by PPHP was issued by Leslie Pargament, **not by Leonardi**, and PPHP's action fully comported with both its written policy and simple logic.  If an employee is on leave, fails to subsequently return to work and fails to contact an employer concerning their return to work, it is reasonable to assume the employee has voluntarily resigned.  Absent from the Pleadings is any claim that Plaintiff even attempted to contact PPHP to deny her voluntary resignation or that Plaintiff contacted PPHP to advise that she extended her leave beyond what was approved, as required by PPHP.  Defendants rely on the other arguments in the opening brief.

**Point IV      This Court Should Not Consider Plaintiff's Affidavit**

Finally, this Court should not consider Plaintiff's Affidavit, as it is well settled that "[i]n considering a motion to dismiss for failure to state a claim, a district court must limit itself to the facts stated in the complaint, documents attached to the complaint as exhibits and documents incorporated by reference in the complaint." *Hayden v. County of Nassau*, 180 F.3d 42 (2d Cir. 1999).  Furthermore,

Plaintiff's Affidavit contradicts her own Pleadings, asserting "[f]ollowing the birth of my child, I received no other phone calls or correspondence from Planned Parenthood other than the congratulations card sent on August 14, 2007, and the phone call from Jennifer Leonardi while I was in the delivery room." However, the Pleadings assert that Plaintiff received a letter from PPHP on August 31, 2007 (*see* Pleadings ¶ 83). Plaintiff's Affidavit also states that she "received no notice regarding the availability, terms, conditions and requirements to continue [her] COBRA health care coverage following [her] termination from Planned Parenthood Hudson Peconic," which claim, as stated in the opening brief, contradicts the documentary evidence.

Alternatively, if this Court decides to consider Plaintiff's Affidavit, this Court should convert the motion to one for summary judgment and in that event "all parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *See* FRCP 12(d). And if this Court so decides, Defendants respectfully request this Court also consider the Proposed Declaration of Leslie Pargament with Exhibits, submitted herewith.

## Conclusion

Based upon the foregoing, Defendants respectfully urge that this Court issue an Order granting Defendants' Motion to Dismiss dismissing the Complaint in its entirety, and awarding Defendants their costs, including attorneys' fees and such other relief as the Court may deem just and proper.

Dated: Tarrytown, New York
November 11, 2009

                Respectfully submitted,
                SILVERBERG ZALANTIS LLP


                By: ___/s/ Katherine Zalantis_____
                  Katherine Zalantis (KZ 7446)
                Attorneys for Defendants
                220 White Plains Road
                Tarrytown, New York 10591
                (914) 682-0707